Kenneth L. SHORT, Appellant–Plaintiff,

v.

HAYWOOD PRINTING CO., INC.,
Appellee–Defendant.

No. 79A02–9411–CV–709.

Court of Appeals of Indiana.

June 21, 1996.

Rehearing Denied Aug. 7, 1996.

Marshall R. Crawford, Lafayette, for Appellant.

Stephen W. Lyman, Gregory P. Kult, Hall, Render, Killian, Heath & Lyman, P.C. Indianapolis, for Appellee.

## OPINION

KIRSCH, Judge.

Kenneth L. Short appeals the entry of summary judgment in favor of Haywood Printing Co., Inc. ("Haywood"), dismissing his five-count tort suit against Haywood. Short raises one issue on appeal which we restate as:

Whether the trial court erroneously determined that Short's claims were preempted by federal labor law?

We affirm.

## FACTS AND PROCEDURAL HISTORY

Short was a member of the Graphic Arts International Union ("Union") which had entered into a Collective Bargaining Agreement ("CBA") with Short's employer Haywood. After Haywood terminated Short's employment, the Union notified Short on January 23, 1992, that he had six months to pursue his rights under the CBA. Short attempted to pursue his rights, but Haywood informed him that he was violating unemployment compensation law and that it would prosecute him if he continued to pursue any rights under the CBA.

Short did not file a claim asserting his CBA rights, and the six month statute of limitation for asserting a breach of the CBA expired.[1] On November 23, 1993, he filed a civil complaint against Haywood in Tippecanoe County Superior Court. Short asserted five counts in his complaint: tortious interference with contractual rights, misrepresentation, invasion of privacy, intentional infliction of mental anguish, and extortion. Haywood responded by seeking removal of the action to the United States District Court for the Northern District of Indiana. The district court remanded the case back to superior court, but noted Short agreed to waive all federal claims. In response to

Haywood's Motion for Reconsideration, the district court stated that it would tentatively retain jurisdiction and would accept removal of the case, should Short attempt to raise federal claims in state court.

On June 27, 1994, Haywood filed a Motion to Dismiss Short's state-court claims pursuant to Ind.Trial Rule 12(B)(6). Haywood asserted that Short's complaint required interpretation of the CBA and was therefore preempted by federal labor law. The court held a hearing in which matters outside the pleadings were considered and treated Haywood's motion as a motion for summary judgment pursuant to Ind.Trial Rule 56. On August 26, 1994, the court granted Haywood's motion and dismissed Short's state claims. Following the court's denial of his Motion to Correct Errors, Short initiated this appeal.

## STANDARD OF REVIEW

When reviewing the grant of a motion for summary judgment, this court applies the same standard as the trial court. *Walling v. Appel Service Co.*, 641 N.E.2d 647, 648–49 (Ind.Ct.App.1994). We determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. T.R. 56(C). In conducting our review, we consider the pleadings, depositions, affidavits, and admissions in a light most favorable to the non-moving party. *Page v. Hines*, 594 N.E.2d 485, 486 (Ind.Ct.App.1992). If the moving party establishes that there is no genuine issue of material fact, the burden falls on the non-movant to prove otherwise. *Hermann v. Yater*, 631 N.E.2d 511, 513 (Ind. Ct.App.1994). We will affirm the grant of summary judgment if it is sustainable on any theory or basis in the evidentiary matter designated to the trial court. *Fawley v. Martin's Supermarkets, Inc.*, 618 N.E.2d 10, 12 (Ind.Ct.App.1993), *trans. denied.*

## DISCUSSION AND DECISION

### Preemption Under Federal Labor Law

At issue in this case is the preemptive scope of § 301 of the Labor Management

---

1. *See* 29 U.S.C. § 160(b).

Relations Act (LMRA),[2] which provides in pertinent part:

> "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Although Congress did not expressly define § 301's preemptive scope, the United States Supreme Court has undertaken that task in a series of cases beginning with *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In *Lincoln Mills*, the Court noted that the congressional intent behind § 301 was that federal law should apply in cases involving labor contracts, thereby allowing the federal courts to fashion a national labor policy. *Id.* at 456, 77 S.Ct. at 917.

Following *Lincoln Mills*, the Court in *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), held that claims alleging violations of labor contracts brought in state court were to be resolved by reference to federal law rather than state law. *Id.* at 104, 82 S.Ct. at 577. In reaching its holding, the Court elaborated on the preemptive effect of § 301 stating:

> "[T]he subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' . . . The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements."

*Id.* at 103, 82 S.Ct. at 576–77.

In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Court extended the preemptive reach of § 301 beyond suits for breach of contract to include tort claims. The Court reiterated the concerns it raised in *Lucas Flour*, and noted that issues requiring the examination of labor agreements and the legal consequences arising from breach of those agreements are questions of federal law "whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* at 211, 105 S.Ct. at 1911. This prevents parties from frustrating the goals of § 301 by relabeling their breach of contract claims as tort claims. *Id.*

Following *Allis–Chalmers*, the Court in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), fully defined the preemptive scope of federal labor law over state claims stating:

> "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles— necessarily uniform throughout the Nation—must be employed to resolve the dispute."

486 U.S. at 405–06, 108 S.Ct. at 1881. Thus, after *Allis–Chalmers* and *Lingle*, any claim brought under state law that requires the interpretation of a collective bargaining agreement, is preempted by § 301 of the LMRA.

### Interference With A Contract

▮▮ In Count I of his complaint, Short alleged Haywood tortiously interfered with the exercise of his rights under the CBA. In order to prove interference with contract under Indiana law the plaintiff must show: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of a breach of the contract; (4) the absence of justification; and (5) resulting damages. *Furno v. Citizens Ins. Co. of America*, 590 N.E.2d 1137, 1140 (Ind.Ct.App.1992), *trans. denied.*

Determining the validity and enforceability of a contract, here the CBA, and questions involving any breach of that agreement would require us to interpret its terms.

---

**2.** 29 U.S.C. § 185. As an alternative ground for preemption, the trial court cited the National Labor Relations Act. 29 U.S.C. § 158(a). The parties did not, however, discuss that Act in their briefs and we do not consider it here. *See* Ind.Appellate Rule 8.3(A)(7).

*Milne Employees Assn. v. Sun Carriers,* 960 F.2d 1401, 1411–12 (9th Cir.1991), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). Therefore, because Short's claim involves a matter of national labor policy, it is preempted by the LMRA and should be resolved by federal law. *See Allis–Chalmers,* 471 U.S. at 209, 105 S.Ct. at 1910 (" § 301[is] a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.") (quoting *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)).

### Deceit, Misrepresentation, and Nondisclosure

 In Count II, Short alleged deceit, misrepresentation and nondisclosure on Haywood's part. Indiana does not recognize the tort of negligent misrepresentation. *Wilson v. Palmer,* 452 N.E.2d 426, 428 (Ind.Ct.App. 1983). Thus, to prevail on the theories of deceit and nondisclosure, Short must state a claim for actual fraud. Actual fraud exists when there is a material misrepresentation of a past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, to the detrimental reliance of a third party. *Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1058 (Ind.1992). Detrimental reliance is often the dispositive element under Indiana law, because the plaintiff cannot recover for fraud unless he reasonably relied on the defendant's misrepresentations. *Captain & Co. v. Stenberg,* 505 N.E.2d 88, 96 (Ind.Ct.App.1987), *trans. denied.*

In *Smith v. Colgate–Palmolive Co.,* 943 F.2d 764 (7th Cir.1991), the Seventh Circuit addressed the issue of whether a claim for fraud was preempted under § 301. In that case, union workers at Colgate's New Jersey facility were notified by management of its intention to cease operations there. The workers and management then amended a pre-existing collective bargaining agreement. The amended agreement contained provisions relating to possible employment at Colgate's facility in Jeffersonville, Indiana.

Twenty-two workers eventually terminated their employment at the Jersey City plant and moved to Jeffersonville. The collective bargaining agreement between the Jeffersonville union and Colgate contained a provision concerning layoff decisions being made based on seniority. Approximately one year later, Colgate laid off the twenty-two workers from Jersey City, because they had the shortest service records at Jeffersonville.

The laid off workers filed suit in district court alleging Colgate had fraudulently misrepresented that the positions in Jeffersonville would be permanent. The district court examined the elements of fraud under Indiana law and reasoned that the plaintiffs would have to show they reasonably relied on Colgate's representations. That question, however, could only be answered after analyzing the collective bargaining agreement between Colgate and the Jersey City workers. *Id.* at 767 (citing *Smith v. Colgate–Palmolive Co.,* 752 F.Supp. 273, 280 (S.D.Ind. 1990)). Because resolution of the workers' fraud claims depended upon an interpretation of the collective bargaining agreement, the Seventh Circuit, applying the *Lingle* analysis, held the claim preempted by § 301. *Id.* at 771.

In the present case, just as in *Smith,* Short may only prove Count II of his claim by showing that he reasonably relied on Haywood's false statements. Following Short's termination, the Union informed him that he had six months in which to pursue any possible violations of the CBA. Haywood allegedly told Short that he would violate employment law if he attempted to pursue his CBA rights. Resolving this issue depends upon an interpretation of the CBA to determine whether the rights provided concerning employee grievance procedures violated other employment law provisions. Following *Smith* and applying the *Lingle* analysis, we hold Short's fraud claim is preempted by § 301.

### Invasion of Privacy

 In Count III of his complaint, Short alleged invasion of privacy. In order to prevail on this claim, Short must prove: (1) private information is divulged to one who had no legitimate interest in the information; (2) in a manner that was coercive and oppressive; and (3) which would be highly offensive

and objectionable to a reasonable person of ordinary sensibilities. *Watters v. Dinn*, 633 N.E.2d 280, 290 (Ind.Ct.App.1994), *trans. denied.*

■ Here, Short has merely repeated the allegations he set forth in Count I. Taking those allegations in a light most favorable to Short, he has failed to assert any facts which would support a cause of action for invasion of privacy. Short does not claim that Haywood divulged any private information. Thus, we do not reach the question of preemption because, as a matter of state law, Short has failed to show any genuine issue of material fact on his invasion of privacy claim.

### Intentional Infliction of Emotional Distress

■ In Count IV of his complaint, Short alleged intentional infliction of mental anguish and humiliation. This is essentially a claim for intentional infliction of emotional distress, which is defined as " 'extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress to another....' " *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991) (quoting Restatement (Second) of Torts § 46 (1965)).[3]

Federal circuit courts which have considered this issue in light of *Lingle* and *Allis–Chalmers* have reached different conclusions. *Compare Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1020 (10th Cir.1990) (emotional distress claim based on mistreatment preempted because it related to direct or indirect rights given under a collective bargaining agreement); *Brown v. Southwestern Bell Telephone Co.*, 901 F.2d 1250, 1256 (5th Cir.1990) (emotional distress claim preempted because claim involved employer's ability to discharge employee under the collective bargaining agreement), *reh'g denied; Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 403 (9th Cir.1990), *cert. denied*, 498 U.S. 835, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990) (emotional distress claim based on attendance policy preempted because it was covered by a collective bargaining agreement); *Douglas v. American Information Technologies*, 877 F.2d 565, 574 (7th Cir.1989) (emotional distress claim preempted because employee asserted unfair application of the collective bargaining agreement), *with Hanks v. General Motors Corp.*, 906 F.2d 341, 345 (8th Cir. 1990) (emotional distress claim based on employee's re-assignment to work with supervisor accused of molesting employee's daughter is not preempted because claim does not require interpretation of the collective bargaining agreement); *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 114 (3rd Cir.1990) (emotional distress claim alleging harassment and discharge is not preempted because it is outside the scope of the collective bargaining agreement); *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir.1989) (emotional distress claim based on assignment to night shift is not preempted because employer could have caused emotional distress without violating the collective bargaining agreement), *reh'g denied; Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133, 138 (7th Cir.1987) (emotional distress claim based on supervisor's provoking employee to throw punch at supervisor and giving supervisor reason to discharge employee is not preempted because such conduct is not arguably permissible under the collective bargaining agreement).

We conclude that the resolution of whether a claim for intentional infliction of emotional distress is preempted by the LMRA turns upon whether the challenged conduct must be examined within the scope of the collective bargaining agreement. Here, we find that Short's claim for intentional infliction of emotional distress is preempted. Short claimed that Haywood sought to inflict emotional distress by preventing him from pursuing his CBA rights. According to Short, Haywood's intentional conduct consisted of lying to him about what his rights were and threatening to sue him if he pursued those rights. This is not solely a question of fact regarding Haywood's motivation and conduct, but a legal question as to what relief Short and Haywood could rightfully assert. Short's claim in this factual context requires

---

**3.** This tort is now recognized as an independent tort, and does not require the establishment of a predicate tort. *See Conwell v. Beatty*, 667 N.E.2d 768, 776 (Ind.Ct.App.1996).

us to examine what Short's and Haywood's rights were under the CBA. Thus, the court did not err in granting Haywood summary judgment on this issue.

### Extortion

In Count V of his complaint, Short realleged the claims he made in Count I under the banner of extortion. Essentially, Short claims Haywood committed extortion by threatening to pursue legal action against Short if he attempted to pursue his CBA rights. This claim, like the claims for interference with a contract, misrepresentation, and intentional infliction of emotional distress, requires us to interpret the CBA's provisions regarding Haywood's and Short's rights. Because that is a question of federal law, the trial court properly found such claim to be preempted by the LMRA.

Because we have found all of Short's claims to be federal claims, our holding is without prejudice to his right to accept the district court's invitation to accept removal of the case.

Affirmed.

SULLIVAN and STATON, JJ., concur.